UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY STEVEN JACQUES,

    *Plaintiff*,

v.                                  CASE NO. 13-cv-10338

COMMISSIONER OF              DISTRICT JUDGE JULIAN ABELE COOK
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 16) be **GRANTED**, that Defendant's Motion for Summary Judgment (doc. 19) be **DENIED**, and the decision of the Commissioner be **REVERSED** and the case **REMANDED** for further proceedings.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income (SSI). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 16, 19.)

---

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff filed an application for SSI on July 27, 2010[3] alleging that he became unable to work on April 1, 2007. (Transcript, Doc. 12 at 11, 142.) The claim was denied at the initial administrative stages. (Tr. at 60-67, 68-76.) On August 25, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Dennis M. Matulewicz, who considered the application for benefits *de novo*. (Tr. at 22.) In a decision dated September 2, 2011, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 27, 2010, the date the application was filed. (Tr. at 18.) Plaintiff requested Appeals Council review of this decision. (Tr. at 14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 27, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On January 28, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

**B.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d

---

[3] Plaintiff initially also filed for a period of disability and Disability Insurance Benefits (DIB), however, Plaintiff's date last insured for purposed of DIB was September 30, 2002, prior to his alleged onset date. DIB is not at issue in this case. (Tr. at 11, 121, 131.)

284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**C.     Governing Law**

Disability for purposes of SSI is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. § 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with

approval in *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since his application date of July 27, 2010. (Tr. at 13.) At step two, the ALJ found that Plaintiff's medical impairments of "sinuses with multiple pockets infected on buttocks (stable after incision and drainage and antibiotic therapy); hydradenitis suppurativa[4] with scar tissue and abscesses; pilonidal cyst; hypertension; and anemia" were "severe" within the meaning of the second sequential step. (Tr. at 13.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 13.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform light[5] work, lifting ten pounds frequently and

---

[4]Throughout the medical evidence of record and depending on the source, two different spellings are used for this impairment: Hidradenitis suppurativa and hydradenitis suppurativa. Both spellings will appear in this Report and Recommendation due to quotations from the multiple medical sources. Where the diagnosis appears without a quotation or attribution, "hidradenitis" suppurativa will be used, consistent with the most recent medical evidence of record, Earle W. Spohn, Jr., D.O., (Tr. at 270-71) and the Listings in the Regulations, discussed below.

[5]

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying

twenty pounds occasionally; sitting only six hours, standing only six hours and walking only six hours of an eight-hour workday; needing the ability to sit and stand at will; never able to use ladders, scaffolds or ropes; only occasionally stooping, kneeling, crouching, crawling, balancing or using ramps or stairs; only occasionally bending, twisting, or turning at the waist or neck, and needing to avoid concentrated exposure to hazards including dangerous and unprotected machinery or heights. (Tr. at 14.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work as a warehouse worker or transportation driver. (Tr. at 17.) At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy and therefore he was not suffering from a disability under the Social Security Act at any time since July 27, 2010, the application date. (Tr. at 18.)

### E.      Administrative Record

Plaintiff was 41 years old at the time of hearing. (Tr. at 30.) Plaintiff is a high school graduate and has completed two years of college. (Tr. at 35, 147.) Plaintiff testified that he can read, write and balance a checkbook. (Tr. at 35.) At the hearing, Plaintiff testified that he is 5 foot 9 inches tall and weighs 163-165 pounds. (Tr. at 42.) Plaintiff initially filed for disability alleging conditions of a cyst on his buttock, hypertension, joint pain and fatigue. (Tr. at 146.) Plaintiff reported that he believed his conditions prevented him from working as of April 1, 2007. (Tr. at 146.)

---

of objects weighting up to 10 pounds. Even though the weight lifted may be very little, a job is in the category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b) .

6

Plaintiff lives with a friend and has four children who do not reside with him. (Tr. at 30.) Plaintiff testified that he vacuums but his friend cleans the house and goes grocery shopping. He described that he mainly stays in bed due to pain. (Tr. at 34.) He testified that he has pain everywhere, with medication he rates it as a "5" on a 10 scale; without medication he rates it a 9 to 10 and he goes to the emergency room when it is "over 10." (Tr. at 35.) In a September 2010 Function Report Plaintiff reported that he was taking medications hydrochlorozine and Metopol and that the Metopol makes him drowsy. (Tr. at 167) In a February 2011 report Plaintiff also reported taking hydralazine and hydrochlorothiazide. (Tr. at 178.)

Plaintiff testified that in 2010 he worked as a transporter for three months, driving patients from medical appointments to their houses. (Tr. at 36, 51.) He explained that he applied for and received a chauffeur's license to perform this job. (Tr. at 36.) Plaintiff testified that he performed this job over forty hours per week, from about 5:30 a.m. until 7 p.m., Monday through Saturday. (Tr. at 37.) He left the position when he started receiving complaints from clients that he was "falling asleep at the wheel and losing concentration." (Tr. at 36-37.) Plaintiff testified that when he went to the clinic, they said that the cyst may be causing it. (Tr. at 37.)

Plaintiff testified that he cannot pay for corrective surgery for his condition. (Tr. 46.) When he has medication from the emergency room he is able to function and do small tasks. (Tr. at 40.) Plaintiff underwent regular treatment for his conditions when he was in prison. He testified that his health was worse at the time of the hearing than it was in April 2010. He stated that "all the normal functions" are hard, "going to the bathroom is hard, shaving is hard, taking a shower is difficult, picking up items that may weigh 15 pounds is difficult." (Tr. at 41-42.) He testified that before he was incarcerated, he was able to do "everything" and was "functioning pretty much normally." (Tr. at 42.) While he was in prison he worked in the store, putting items in a bag,

7

approximately three hours a day, five days a week. (Tr. at 43.) Plaintiff described problems with his joints, including his ankles, and with bending. (Tr. at 44.) Plaintiff testified that he was told that excretion from the cyst is causing problems with his joints. (Tr. at 44-45.) Plaintiff explained that he mainly stays at home because the cyst drains constantly and his doctor told him to keep the wound clean. (Tr. at 48.) He covers the wound with a protective pad or paper towels if he cannot afford the pads. (Tr. at 49.) Plaintiff testified that he has to change the dressing twelve to fourteen times per day. (Tr. at 57.)

Michigan Department of Corrections medical records show that Plaintiff complained of and sought treatment for the cysts as early as August 9, 2007. (Tr. at 192.) His gait was reportedly "good." (*Id.*) On August 20, 2008, he underwent an infectious disease consultation with Craig Hutchinson, M.D., who diagnosed hydradenitis suppurativa with at least moderate disease involving the right buttock, noting that Plaintiff also suffered from hypertension. (Tr. at 202-03.) In January 2009 Plaintiff was reporting neck pain and headaches and that drainage and pain from the wound were minimal. (Tr. at 193.) A January 9, 2009 x-ray of the cervical spine revealed only muscle strain. (Tr. at 194.)

In March 2009, while he was incarcerated, Plaintiff underwent a surgical incision and drainage of multiple infected sinus pockets on his buttocks. (Tr. at 188.) The surgeon described "sepsis going from left-to-right across the middle part of buttock region." (Tr. at 190.) Plaintiff was transferred to Duane Waters Health Center for follow-up care of the infected wound. Plaintiff was put on antibiotics including doxycycline and metronidazole and his wound was dressed daily. (Tr. at 188, 225-27.) On April 8, 2009 Dr. Hutchinson noted a diagnosis of "hydradenitis plus minus pilonidal cyst related sinuses of the buttocks and anemia probably multifactorial." (Tr. at 198-99.) Dr. Hutchinson reported that Plaintiff "feels great" and "is able to walk around" and "sit

8

comfortably." (Tr. at 198.) After two weeks Plaintiff was reportedly stable and the wounds were "much better." (Tr. at 188.) He was discharged on April 21, 2009. (*Id.*)

On a July 8, 2009 examination, Dr. Hutchinson noted that Plaintiff "reports that he feels terrible," has substantial fatigue and "continues to have bloody drainage and bloody fluid from the sinuses on the buttock pretty much as previously." (Tr. at 200.) Dr. Hutchinson noted that Plaintiff understood that the previous unroofing surgery was "not at all definitive" and that a definitive surgery would involve extensive plastic surgery to remove the involved areas. (Tr. at 201.) In August 2009 Dr. Hutchinson noted that Plaintiff reported that he had less swelling and drainage in the buttock area but continued to need three pads daily for the drainage. (Tr. at 204.) The doctor noted that Plaintiff hoped to gain parole in April 2010 and address the necessary definitive surgery when he is back in the community. (Tr. at 204.) The doctor noted no fever or chills and Plaintiff reported the buttock pain was slightly better yet he was waiting approval to use Ultram for flares of pain. (*Id.*) The doctor also diagnosed anemia and noted that hypertension was well-controlled. (Tr. at 204.) Plaintiff was taking iron sulfate, hydralazine, Metoprolol and hydrochlorothiazide. (Tr. at 204.)

In September 2009 Plaintiff reported that he had "a lot" of drainage and in October 2009, he reported that drainage was unchanged. (Tr. at 206, 209.) At the October examination he also reported no increased sleeping or fatigue. (Tr. at 209.) Vernon R. Stevenson, M.D., reported that the hidradenitis suppurativa was "stable for now." (Tr. at 209.)

After his release in April 2010, Plaintiff treated at Gary Burnstein Community Health Clinic and St. Joseph Mercy emergency room. (Tr. at 215, 219) In April 2010 Plaintiff sought treatment at the Burnstein clinic for the cyst and his hypertension. (Tr. at 223.) On July 8, 2010 Plaintiff presented seeking medication refills and reportedly had been without medication for two months.

9

(Tr. at 221.) His abscess and hypertension were noted as diagnoses. (Tr. 221.) On July 22, 2010 Plaintiff was seen for a blood pressure check and complained of arthritis. He was diagnosed with osteoarthritis (with no supporting medical evidence or images) and hypertension. (Tr. at 220.)

The record shows that Plaintiff reported to St. Joseph Mercy in October 2010 with complaints of "multiple cysts," hypertension and arthritis and November 2010 with complaints of arthritis. (Tr. at 258-64) Other than blood test results there are no supporting medical treatment notes or records for these visits.

Earle W. Spohn, Jr., D.O., examined Plaintiff on February 1, 2011, for evaluation of the abscess on his buttocks. (Tr. at 270-71.) Dr. Spohn reported "extensive hidradenitis suppurativa with scar tissue and abscess formation of the medial one-third of the right buttocks and a small portion of the left buttocks. The right buttocks in the mid portion is hard, indurated, it is relatively pain free. There is tenderness upon deep palpation and there is purulent drainage . . . ." (Tr. at 270.) Dr. Spohn advised that to "resolve this enigma" Plaintiff would have to undergo a radical excision of the area, placement of a wound VAC and extensive post-operative care, with both hospitalization and at an extended care facility, followed by a skin grafting attempt and wound care for an additional ten to fourteen days. (Tr. at 270.) The doctor suggested that it is "urgent" that Plaintiff has this done because the "area of involvement will only increase in size with time." (Tr. at 270.)

Plaintiff's attorney submitted new medical records to the Appeals Council, shown as Exhibit 7F in the Transcript. The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing*

10

*Richardson*, 402 U.S. at 401). Plaintiff did not request remand for consideration of this new evidence.[6]

The vocational expert ("VE") testified that Plaintiff's past work as a warehouse worker was at the medium exertional level and unskilled and as a transportation driver was at the light exertional level and semi-skilled pursuant to the Dictionary of Occupational Titles (DOT). (Tr. at 51, 54.)

At the hearing, the ALJ asked the VE to consider an individual of the Plaintiff's age, education and past work experience who can:

> [L]ift 20 pounds maximum, 10 pounds frequently, 20 pounds occasionally, sit six hours of an eight-hour workshift, who can stand and/or walk six hours of an eight-hour workshift, who should never use ladders, scaffolds or ropes, only occasionally use ramps or stairs, stoop, kneel, crouch, crawl or balance, avoid all concentrated

---

[6]The court may remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).

"[T]he statute is quite explicit as to the standards that must be met before a district court may order a sentence six remand for the taking of additional evidence. . . . The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006)(citations omitted). Plaintiff has not requested a remand for consideration of this evidence and has not shown good reason for failure to provide this evidence to the ALJ. Similarly, Plaintiff has not shown that the records are "new" or "material." A sentence six remand has not been requested for consideration of these records and cannot be granted where Plaintiff has not born his burden to show that such remand is warranted.

Plaintiff's brief references a document in Exhibit 7F at transcript page 281. (Doc. 16 at 4.) That particular page of 7F is duplicative of evidence that was before the ALJ and is therefore considered. (Tr. at 221.)

11

exposure to hazards, including dangerous and unprotected machinery or heights and only occasionally bend, twist, turn at the waist or neck. (Tr. at 52.)

The VE testified that such an individual could not perform Plaintiff's past work. (*Id*.) The VE testified, however, that there were light jobs that such an individual could perform within the region defined as the State of Michigan. (Tr. at 53.)

The ALJ then asked the VE to consider the same individual as the prior hypothetical with the additional limitation of a sit/stand at will option. The VE testified that this further limitation would result in ability to perform the sedentary unskilled jobs including ticket checker with 2,100 jobs in the region, bench assembler with 3,800 jobs in the region and general office clerk with 4,100 in the region. (Tr. at 53.) At the light exertional level, jobs would include counter attendant with 1,500 in the region and general office clerk with 2,000 in the region. (Tr. at 54.)

The ALJ asked a general question whether Plaintiff would be able to perform his past work or other work in the economy if his testimony "relative to any pain, discomfort, [or] limitation" were found to be "entirely credible." (Tr. at 54-55.) The VE testified that there would not be work for such an individual due to the "need to lie down for pain management," the "side effects of medications" and the "level of pain he experiences." (Tr. at 55.) The ALJ then asked whether an individual, due to pain, fatigue or medications, could not "sustain sufficient concentration, persistence, or pace of simple repetitive tasks on a continuing basis . . . eight hours a day, five days a week, 40 hours a work week," would be precluded from full-time competitive employment. (Tr. at 55.) The VE testified that such circumstances would preclude employment. (*Id.*)

In response to questioning from Plaintiff's attorney about the effect of changing wound dressing throughout the workday, the VE testified that being off-task for more than 10% of the

workday, above and beyond the normal breaks, could impact an individual's ability to perform substantial gainful employment. (Tr. at 56.)

### F. Analysis

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 16.) Specifically, Plaintiff argues that the ALJ should have found that he meets Listing 8.00 because he provided sufficient evidence of the existence and severity of his skin disorder, hidradenitis suppurativa. (Doc. 16.) At step two, the ALJ found that Plaintiff had the following "severe" impairments: "[S]inuses with multiple pockets infected on the buttocks (stable after incision and drainage and antibiotic therapy); hydradenitis suppurativa with scar tissue and abscesses; pilonidal cyst; hypertension; and anemia." (Tr. at 13.) At step three the ALJ determined that these impairments do not meet or medically equal the listed impairments in the Regulations, Appendix I, Subpart P. (Tr. at 13.)

The analysis of this case focuses on the "Listing of Impairments," 20 C.F.R. § 404, Subpt. P, Appendix 1. The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 416.925. In order to establish disability under the Listings, each requirement of the applicable Listing must be met. *See* 20 C.F.R. § 416.925(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Emphasis in original.). Where a claimant successfully carries this burden, the

13

Secretary will find the claimant disabled without considering the claimant's age, education and work experience. *See* 20 C.F.R. § 416.920(d).

Category 8.00 of the Listing of Impairments covers skin disorders, including "hidradenitis suppurativa," 20 C.F.R. § 404, Subpt. P, App. 1, 8.00(1)(A). To meet the listing for hidradenitis suppurativa requires evidence of "extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed." Listing 8.06.

Plaintiff argues that he "may qualify for disability benefits" under this listing "if the medical records support the claim that these lesions are persistent for three months or more." (Doc. 16 at 4.) It is necessary, however that Plaintiff meet *all* of the criteria as set forth in Listing 8.06, which includes not only a duration of three months despite continuing treatment, but that the skin lesions be "extensive" as defined therein, and involve "both axillae, both inguinal areas or the perineum."

The ALJ's findings of fact and conclusions of law are perfunctory with respect to step three of the analysis, wherein he finds that Plaintiff's severe impairments "do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations." (Tr. at 13.) It is clear, however, that the ALJ's decision may be read as a whole for the review and analysis of the evidence of record that is relevant to the determination that Plaintiff's impairments, including the skin disorder, did not meet a listing. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)("In this case, the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [claimant] did not meet the requirements for any listing, including Listing 3.02(A)."). As Defendant correctly points out, it "would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five," therefore the

Court considers the ALJ's decision in whole for explanation of his step three determination. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).

The ALJ specifically addressed Plaintiff's skin-related diagnoses, including that of hidradenitis suppurativa and the pilonidal cyst. The ALJ concluded that Plaintiff had a diagnosis of hydradenitis suppurativa. The ALJ went so far as to note the slight variance in diagnoses as pointed out by two different treating physicians: The surgeon who noted that Plaintiff's problems may be due primarily to the pilonidal cyst rather than the hydradenitis suppurativa and the doctor who diagnosed the hydradenitis suppurativa with possible contribution of the pilonidal cyst. (Tr. at 15, 190, 198-99, 200).

As the ALJ correctly pointed out, the areas where infected sinus pockets have been most frequently identified and treated are the buttocks and specifically, a pilonidal cyst. (Tr. at 13-15.) However, the record contains evidence of at least some involvement of the perineum. In March 2009, John C. Sennish, M.D., noted that in "the perianal area and extending up to sacrococcygeal area there is separation and induration as described in the first paragraph" and, on examination, reported "[i]nferiorly, in the midline raphe there is another opening and I must say though hydradenitis might be my top consideration, pilonidal sinus disease is another strong likelihood." (Tr. at 190-91.) In an unsigned April 7, 2009 discharge summary, Zahirul Talukder, M.D., notes that the infected cyst was on the "perirectal area." (Tr. at 225-26.)

The record also shows that there may be relevant periods of at least three months in which the skin lesions persisted despite treatment. The ALJ has presented a chronology of events with respect to treatment of the hidradenitis suppurativa and pilonidal cyst from which he concludes that after April 2010 Plaintiff received little treatment other than medication refills until February 2011. The ALJ's conclusion that the "nearly illegible" Gary Burnstein Community Health Clinic records

"do not appear to mention the claimant's cyst" is not supported by the record. The cyst was referred to as an abscess[7] in records dated April 14, 2010 and July 8, 2010, was noted as an abnormality in the skin and rectal region, and Plaintiff was to be referred to surgery. (Tr. at 221, 223.) As discussed above, there is evidence in the record that suggests that the cyst or cysts are part of the hidradenitis suppurativa. (Tr. at 200.)

Further, in discussion of the St. Joseph Mercy records, the ALJ relies on only Plaintiff's complaints of arthropathy or arthritis. (Tr. at 15-16.) One of the records from St. Joseph Mercy Hospital dated October 25, 2010, notes that Plaintiff's chief complaint was "multiple cysts." (Tr. at 15-16, 259.) The records from St. Joseph Mercy consist of a single page per visit containing primarily administrative information and one set of blood test results. (Tr. at 258-64.) It is improbable that there are no actual treatment notes available from the St. Joseph Mercy visits. Plaintiff was represented by the same counsel at the ALJ hearing as in the present matter, and counsel questioned Plaintiff about the emergency room visits during the hearing. (Tr. at 45-46.) One might have expected further inquiry or development of the record with respect to the sparse hospital records.

The ALJ's decision lacks analysis as to whether the skin lesions were "extensive." Pt. 404, Subpt. P, App. 1, 8.06. Listing 8.00(1)(A)(C)(1) defines "extensive skin lesions" as "those that involve multiple body sites or critical body areas, and result in a very serious limitation." Examples of "serious limitations" include:

---

[7]The handwritten records are difficult to discern. The abscess appears to be identified as a "perirectal" abscess or cyst. At an earlier level in the application process, the Agency's single decision maker read this note as a "perineum" abscess. (Tr. 63.) Either term gives identity to the general anatomical location of the abscess. The single decision maker's assessment is referenced herein solely for purposes of giving legibility to a handwritten document and not as a medical opinion or other evidence.

> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that seriously limit your ability to ambulate. *Id.*

While the ALJ set forth some physical limitations in the RFC it is entirely unclear on this record which physical impairments and evidence support those limitations, for example, limitations on bending, twisting or turning at the waist or neck. With the exception of the hypertension and anemia, the other severe impairments that were found by the ALJ and supported by substantial evidence in the record appear to be related to the skin condition(s).

Finally, the Listing requires that the lesions "persist for at least 3 months *despite continuing treatment as prescribed.*" Pt. 404, Subpt. P, App.1, 8.06 (emphasis added). Listing 8.00(1)(A)(C)(4) defines the assessment of treatment. The determination of whether the skin lesions are extensive and an analysis of the treatment were not addressed by the ALJ.

Plaintiff generally alleges that the ALJ failed to properly assess his credibility with respect to his allegations about the intensity and persistent of the pain associated with the hidradenitis suppurativa. (Doc. 16 at 4.) A detailed analysis of the ALJ's credibility determination is premature where this remand is premised on the step three analysis. The ALJ's credibility analysis and findings with respect to pain and fatigue were detailed and relied on specific evidence and inconsistencies in the record. However, in light of evidence that Plaintiff sought treatment for the hidradenitis suppurativa and cysts at both St. Joseph Mercy and Gary Burnstein Community Health Clinic, I suggest that a new determination should be made regarding Plaintiff's statements about the limiting effects of this condition.

Although the issue was not raised by Plaintiff, I further suggest that the ALJ's step five finding is not supported by substantial evidence and a new determination should be made on remand. The RFC contains a limitation to sitting and standing at will. (Tr. at 14.) The VE testified that while there would be light exertional jobs available with a sit/stand option, including those of counter attendant (1,500 jobs) and general office clerk (2,000 jobs), the dishwasher position (4,200 jobs) would be eliminated. (Tr. at 54.) The dishwasher position was cited in the ALJ's decision. (Tr. at 18.)

### G.   Remand

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. The court may reverse and direct an award of benefits if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. . . . where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Felisky,* 35 F.3d at 1041 (citing *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). This comports with the principle that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson*, 378 F.3d at 547 (citations omitted).

In this case, for the reasons set forth above, the undersigned concludes that there are unresolved legal and factual issues. The ALJ's decision should be reversed and the case remanded under sentence four of 42 U.S.C. § 405(g). On remand the ALJ should conduct a new step three analysis and make express findings on the issue of whether Plaintiff's condition meets or medically equals Listing 8.06. At step four the ALJ should conduct a new analysis of Plaintiff's RFC to the

extent necessary, expressly addressing the impact of the skin condition on his RFC in combination with the other impairments.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837 (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                    s/ Charles E Binder
                                                    CHARLES E. BINDER
Dated: June 6, 2014                            United States Magistrate Judge